# Third District Court of Appeal

## State of Florida

Opinion filed February 20, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2873
Lower Tribunal No. 12-17899
_____

**David Auerbach,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ellen Venzer and Marisa Tinkler-Mendez, Judges.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Rachel Kamoutsas, Assistant Attorney General, for appellee.

Before EMAS, C.J., and FERNANDEZ and LOGUE, JJ.

EMAS, C.J.

## INTRODUCTION

David Auerbach appeals from a judgment and sentence for one count of second-degree murder (of his father) and two counts of aggravated elderly abuse (upon his mother and father). On appeal, Auerbach contends the trial court erred in failing to make an independent determination that he was competent to proceed to trial. The State concedes the trial court committed error and further concedes Auerbach is entitled to relief. However, the parties disagree over the nature of that relief: Auerbach contends he is entitled to a new trial (if and when he is properly determined competent); the State contends we should remand, not for a new trial, but for a nunc pro tunc competency determination. For the reasons that follow, we reverse and remand for a new trial.[1]

## FACTS AND PROCEDURAL BACKGROUND

This case arises from a physical altercation between David Auerbach and his elderly parents. Weeks after the altercation, Auerbach's father died, and Auerbach was charged with second-degree murder and two counts of aggravated abuse on an elderly person.

---

[1] Auerbach also asserts on appeal that: 1) the trial court failed to conduct a proper Faretta inquiry before permitting Auerbach to proceed pro se; and 2) his conviction for aggravated abuse upon his father should be vacated on double jeopardy grounds. Because we are reversing and remanding for a new trial on the competency issue, (and because Auerbach is represented by counsel) these two claims are moot.

2

Following his arrest in July 2012, the trial court ordered psychological evaluations of Auerbach. Three doctors performed evaluations and submitted written reports on their findings. On January 9, 2013, the trial court held a hearing at which it was advised that two doctors agreed Auerbach was incompetent and the third doctor found Auerbach competent to proceed.

The matter was set for a formal competency hearing, which the trial court held on April 18, 2013. The three doctors' written reports were in the court file. No testimony was taken at the competency hearing. The State and defense simply stipulated to the contents of the doctors' reports and the judge thereafter concluded:

> So, we've [sic] going to have a stipulation to incompetency in light of the reports by the doctors; that they would come in and testify consistent with their reports.

This oral finding of incompetency was followed by a written order adjudicating Auerbach incompetent to proceed, and Auerbach was committed to a forensic hospital.

Several months later, Auerbach returned from the hospital and was reevaluated by two of the doctors from his original competency evaluations. These evaluations were performed, and written reports prepared, in July 2013. One doctor opined Auerbach was competent, while the other doctor found him incompetent to proceed. A third doctor was appointed, and found Auerbach competent to proceed. The three doctors filed their written reports, and a final competency hearing was held

3

on October 15, 2013. During the hearing, both parties stipulated that (1) the doctors would have testified consistently with their reports; and (2) Auerbach was competent to proceed. Judge Venzer found Auerbach competent to proceed to trial "based upon the stipulation of the parties." No written order was rendered adjudicating Auerbach competent.

In May 2015, Judge Venzer sua sponte disqualified herself from the case. Judge Tinkler-Mendez was assigned as the successor judge, and presided over the trial, which was held in June 2016, thirty-two months after the October 2013 competency hearing. [2] The jury found Auerbach guilty on all counts.

## ANALYSIS

"The procedure for determining a defendant's competency is governed by Florida Rules of Criminal Procedure 3.210 through 3.215." Hawks v. State, 226 So. 3d 892, 893 (Fla. 4th DCA 2017). We review the lower court's judgment and its compliance with these rules de novo. Id.

As a general rule, an accused "is presumed sane when he enters the courtroom." Moreno v. State, 232 So. 3d 1133, 1136 (Fla. 3d DCA 2017). However, once a trial court finds a defendant incompetent, the defendant is "presumed to remain incompetent until adjudicated competent to proceed by a court." Dougherty

---

[2] Review of the record shows that no additional competency evaluation was performed before or during trial.

4

v. State, 149 So. 3d 672, 676 (Fla. 2014) (quotation omitted). A defendant who is adjudicated incompetent "may be committed for treatment to restore his competency to proceed." Id. at 677. That is precisely what happened here—Auerbach was found incompetent following a hearing, committed to a forensic hospital, and (several months later) reevaluated to determine whether he had been restored to competency.

When notified that a defendant's competency has been restored, a trial court must hold a hearing to make such a determination. Id. at 676. The hearing generally requires presentation of live testimony from experts, an independent determination of competency by the trial court, and entry of an order. Id.

In lieu of live testimony, however, the parties can stipulate that the expert witnesses, if called to testify at the hearing, would testify consistent with their written reports. Id. Importantly, the parties are not "stipulating" to competency. It remains for the trial court to make an independent legal determination of the defendant's competency in consideration of "the expert testimony or reports and other relevant factors." Moulton v. State, 230 So. 3d 934, 937 (Fla. 2d DCA 2017) (quoting Dougherty, 146 So. 3d at 667). Indeed, this court recently elaborated on this point in Hernandez v. State, 250 So. 3d 183, 186-87 (Fla. 3d DCA 2018):

> There is nothing in the record to suggest that the trial court reviewed or considered the expert's report, or made an independent assessment or finding of Hernandez's competency. The record (and the single excerpt above) indicates instead that the trial court found Hernandez competent based solely upon the parties' stipulation. However, such a stipulation, while not unusual, is also not sufficient by itself for a valid

5

determination of competency. In other words, a stipulation that the expert, if called as a witness, would testify consistently with the report, is not a stipulation to competency. Indeed, the parties cannot "stipulate" to a defendant's competency (or incompetence), as it is an independent legal determination for the trial court to make after consideration of the expert testimony or reports, and other relevant factors. Dougherty v. State, 149 So.3d 672, 678 (Fla. 2014); Shakes v. State, 185 So.3d 679, 681 (Fla. 2d DCA 2016). The trial court's acknowledgment and acceptance of the parties' stipulation was insufficient to satisfy the requirements of rule 3.212 and principles of due process. More was required:

> At the competency hearing, the court must make its own independent finding of competence or incompetence. If the parties and the court agree, the court may decide the issue based on the experts' reports without receiving any testimony. However, the court must regard the reports as advisory only. Further the court is not permitted to merely accept a stipulation of competence. In fact, acceptance of a stipulation is improper even when all the experts have opined that the defendant is competent, as other evidence may indicate incompetence.

(Quotations omitted).

The State properly and commendably concedes that the trial court failed to make an independent determination of Auerbach's competency, and that reversal is required. Therefore, the only remaining issue is the proper remedy on remand.

At the commencement of this appeal, both parties agreed the remedy on remand should be for a hearing on whether a retroactive competency determination is possible, specifically whether the trial court can discern from the record whether Auerbach was competent at the time of his June 2016 trial. The availability of such

a remedy—under the appropriate circumstances—was recognized by the Florida

Supreme Court in <u>Dougherty</u>, 149 So. 3d at 678-79:

> Generally, *the remedy for a trial court's failure to conduct a proper competency hearing is for the defendant to receive a new trial*, if deemed competent to proceed on remand. A new trial is not always necessary where the issue of competency was inadequately determined prior to trial; *a retroactive determination of competency is possible*. However, as we have previously noted, the United States Supreme Court has cautioned that determining competency to stand trial retrospectively is inherently difficult, even under the most favorable circumstances. The chances of conducting a meaningful retrospective competency hearing decrease when experts must rely on a cold record. Nevertheless, in <u>Mason</u>, this Court held that *a nunc pro tunc competency evaluation could be done where there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing*. In <u>Mason</u>, this Court noted that [s]hould the trial court find, for whatever reason, that an evaluation of Mason's competency at the time of the original trial cannot be conducted in such a manner as to assure Mason due process of law, the court must so rule and grant a new trial. Thus, the remedy for a trial court's failure to follow the procedures discussed above depends on the circumstances of each case.

(Emphasis added, internal citations and quotations omitted). The parties also agreed

that, should the trial court be unable to make such a determination, a new trial is

required once the trial court formally determines Auerbach is competent to proceed.

However, the parties' agreement on the appropriate remedy was altered by

this court's opinion in <u>Losada v. State</u>, 44 Fla. L. Weekly D69 (Fla. 3d DCA Dec.

7

26, 2018), issued after oral argument was held in this case. Based on the substantial similarity between this case and Losada, we ordered supplemental briefing on whether our decision in Losada requires us to reverse and remand for a new trial, or whether the trial court may still be permitted an opportunity to make a retroactive competency determination. Having considered the supplemental briefing, and upon our review of the entire record, we agree with Auerbach that Losada is indistinguishable in all relevant circumstances from the instant case, and that we are compelled to reverse and remand for a new trial.

Losada was charged in both Miami and Palm Beach with numerous counts of possession and transmission of child pornography. Id. at *1. In October 2012, the Palm Beach Circuit Court found Losada incompetent to proceed based on an expert report. The Miami-Dade Circuit Court relied on the same report to adjudicate Losada incompetent to stand trial.

In January 2014, after the Palm Beach Circuit Court found Losada was restored to competency, Losada was tried, found guilty, and sentenced.

Losada was then transferred to Miami-Dade for trial on his separate charges pending there. The Miami-Dade Circuit Court, having previously adjudicated Losada incompetent, appointed two doctors to examine Losada and evaluate whether he was now competent to proceed. Each doctor opined, in written reports prepared

in late October and early November 2013, that Losada was competent to proceed to trial.

In December 2013, with the parties in possession of the doctors' reports, the trial court held a hearing at which Losada's attorney stated:

> [Losada has] been evaluated by two different doctors. At this time both finding that he is competent. I will stipulate to the reports.

Id. at *2. Based on counsel's stipulation, the trial court found Losada competent to proceed to trial. No written order on the competency determination was rendered, nor did the trial court indicate it had reviewed the reports or made an independent determination of competency.

Twenty-eight months later, in April 2016, the case proceeded to trial where Losada was found guilty and sentenced.

Like Auerbach, Losada appealed his conviction and sentence arguing, in part, that the trial court failed to make an independent determination of his competency to stand trial. In Losada, we recognized that "there are situations where a new trial is unnecessary if the trial court can make a retrospective competence determination on remand, based on evidence available at the time of the trial." Id. at *4 (citing Dougherty, 149 So. 3d at 679). Nevertheless, we rejected such a remedy, remanding instead for a new trial and concluding that, under these facts, a nunc pro tunc

9

competency hearing "would not ensure that Losada's constitutional due process rights are met." Id. at *7.

Most significant to our analysis in Losada was the twenty-eight month gap in time between Losada's competency hearing (December 2013) and his trial (April 2016). "The competency hearing," we explained, "was not contemporaneous to trial." Id. at *4 (quoting Dougherty, 149 So. 3d at 679). We also noted that the only evidence available to the trial court in making a nunc pro tunc competency determination would be the doctors' reports issued three years before trial. And like the competency hearing itself, those doctors' reports were not "contemporaneous with the trial" and, therefore, could not appropriately form the basis of a retroactive competency determination.[3] Id. at *5 (quoting Dougherty, 149 So. 3d at 679).

The case before us presents circumstances strikingly similar to those in Losada:

• In the instant case, as in Losada, Auerbach was initially found incompetent to proceed, and later found competent following an inadequate competency hearing.

---

[3] Lastly, we suggested that the reports' contents showed the doctors "were unaware of Losada's medical history or behavioral difficulties" from the original Palm Beach, competency determination. This factor is not pertinent to the facts in this case.

• In the instant case, as in <u>Losada</u>, the trial court failed to make an independent competency determination, relying instead on a "stipulation" of competency by the parties.

• In the instant case, as in <u>Losada</u>, the trial court failed to render a written order on this determination.

• In the instant case, as in <u>Losada</u>, the doctors' evaluations were conducted, and reports prepared, nearly three years before trial; these medical experts did not "examine[] or observe[]" Auerbach "contemporaneous with the trial," meaning any nunc pro tunc hearing would require the trial court to "rely on a cold record." <u>Id.</u> at *4 (quoting <u>Dougherty</u>, 149 So. 3d at 679).

• Finally, and most significantly, in the instant case, as in <u>Losada</u>, the ill-fated competency hearing was held years before the trial— a gap of twenty-eight months in <u>Losada</u> and a gap of thirty-two months in the instant case.

**CONCLUSION**

As the Florida Supreme Court reaffirmed in <u>Dougherty</u>, 149 So. 3d at 679, a nunc pro tunc competency determination is appropriate where "there are a sufficient number of expert and lay witnesses who have examined or observed the defendant contemporaneous with trial available to offer pertinent evidence at a retrospective hearing." (quoting <u>Mason</u>, 489 So. 2d at 737).

In the instant case, as in <u>Losada</u>, a nunc pro tunc competency determination is neither appropriate nor possible upon the record before us. We can find no principled basis upon which to distinguish <u>Losada</u> or to justify a remand for a nunc pro tunc competency determination. We therefore reverse and remand for a new trial following the trial court's proper determination that Auerbach has been restored to competency.